Shauck, J.
The material provisions of the statute under which the defendant was convicted are in substance as follows:
‘ ‘ Section 1. Be it enacted by tl%e General Assembly of the State of Ohio, That a trust is a combination of capital, skill or acts by two or more persons, *226 firms, partnerships, corporations or associations of persons, or of any two or more of them for either, any or all of the following purposes:
“1. To create or carry out restrictions in trade or commerce.
“2. To limit or reduce the production, or increase, or reduce the price of merchandise or any commodity.
“3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.
“4. To fix at any standard or figure, whereby its price to the public or consumer shall he in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this state.
“5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description by which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so. as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity, or by which they shall agree to *227 pool, combine or directly or indirectly unite any interests that they-may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. Every such trust as is defined herein is declared to be unlawful, against public policy and void.”
The second section relates to proceedings in quo warranto in case of the violation of the act. The third section relates to foreign corporations. The fourth section is as follows:
“Section 4. Any violation of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade, and any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its commission, or who shall as principal, manager, director, agent, servant or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or furnish any information to assist in carrying out such purposes, or orders thereunder or in pursuance thereof, shall be punished by a fine of not less than fifty ($50) dollars nor more than five thousand ($5,000) dollars, to be imprisoned not less than six months nor more than one year, or by both such fine and imprisonment. Each day’s violation of this provision shall constitute a separate offense. ’ ’
The fifth section relates to practice and the sixth to evidence in the prosecution. The ninth section is as follows:
“Section 9. That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this state.”
*228 We have the benefit of the carefully considered opinion of the circuit court which conducted it to the conclusion that the conviction was erroneous, and this conclusion is supported by elaborate arguments by counsel for the defendant in error. It is clearly shown that there are contractual rights with reference to the use of one’s property and faculties which the general assembly is powerless to destroy, that a valid enactment to prohibit the.making of contracts must be within the police power, and that to be within that power the prohibited contract must be hurtful to the public, and hurtful in a legal sense. That view of the subject has been taken by this court in many cases, and in State ex rel. Attorney General v. The Buckeye Pipe Line Co., 61 Ohio St., 520, we applied it to this statute, concluding, nevertheless, that the inhibition involved in that case is valid.
Effective illumination of the present case may be promoted by concentrating the rays of light which have been diffused upon it. Two propositions comprehend all that has been urged against the validity of the conviction in the court of common pleas. They are that the act is void because its terms do not except from its prohibitions contracts, acts and transactions which are protected by the constitution, and that the indictment is fatally defective because its allegations do not exclude them. Obviously that which is not within the terms of an inhibition need not be excepted from it. Confining our view to the provisions of the act upon which the validity of the conviction in. the present case depends, it is quite .clear that they do not prohibit any contract or transaction which according to the view of the subject *229 taken in State ex rel. Attorney General v. The Buckeye Pipe Line Co., the general assembly .may not prohibit in the exercise of the police power. The Delaware Coal Exchange, as its purpose is defined in the indictment, is a trust within both the third and fourth subdivisions of the first section of the act, and that section defines the combinations which the act prohibits. The purposes named in these subdivisions do not relate to any contract with respect to the use of one’s property or his faculties. They are purposes which made contracts void at common law as being opposed tó public policy, which, according to legal views which still prevail,' requires that the conditions of competition be maintained. They are also within the combinations which were prohibited by many ancient statutes. By the use of the distributive terms, “either, any or all,” these purposes are as completely separated as though each subdivision constituted the subject of a different statute and the ninth section of the act provides that all of the provisions shall be held cumulative of each other and of all other laws now affecting the subject. There is, therefore, in the terms of the act authority for the conclusion that the general assembly intended to prohibit combinations for the purposes mentioned in the subdivisions of the first section severally, and to its operation it is only necessary that the particular contract or transaction charged in the indictment be within one of the subdivisions of the first section and that it be a contract or transaction which it is competent for the general assembly to prohibit. In view of these distributive terms and of the ninth section giving an independent and cumulative relation to the different provisions of the act, the language em *230 ployed requires that the act be interpreted as though the subdivisions of the first section were severally followed by the provisions of the fourth, fifth, sixth and seventh sections which prescribe prohibitions and penalties aud which the circuit court held to be unconstitutional. The case, therefore, offers no opportunity for the' application of the principle urged with vigor and supported by the citation of numerous authorities that where an act contains an indivisible prohibition whose terms include contracts which the legislature is powerless to prohibit the courts cannot save the act by restricting the natural and obvious meaning of its terms. It may be conceded that the principle is sound and that it derives sufficient support from the consideration that, in the cases to which it applies, it prevents the substitution of the judicial for the legislative department of the government.
But it is said that the third subdivision of the first section, “to prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity,” is void because it would prevent the formation of partnerships and corporations to conduct business, the sale of property which has been used in competition and other like inalienable rights, because of the abatement in competition which would result therefrom, and that this conclusion is so obvious that argument in its support is unnecessary. Brief attention to the development of the law upon the subject will show that argument to that end would be unavailing rather than unnecessary. So long recognized and so frequently applied in the same jurisdictions that their congruity must be admitted are the doctrines that *231 every contract in restraint of trade is void if nothing else appears; but nevertheless, that property used in the competition of trade may be sold, including the good will of the vendor’s business, and that to effectuate the sale of the good will the vendor may make a valid stipulation to abstain from competition if the stipulation is limited to that purpose; and courts of equity have even required members of a co-partnership to abstain from the conduct of a rival business. ' In short, the courts have uniformly denounced' contracts in restraint of trade unless the restraint results as an incident from the use of one’s property and his faculties. The distinction is of easy grasp and it is too late to question its importance. Within the limits of the present case, it is obvious that the effect of the statute is to prohibit affirmatively such contracts and transactions as were previously unlawful, but which could be so adjudged only when the aid of the courts was invoked for their enforcement.
It must be obviously unavailing to urge the constitutionally protected right to make contracts with reference to one’s property and his faculties as an objection to a statute which does not prohibit or restrain the power of making such contracts.
Examination of the numerous cases cited in the briefs shows that legislation having the same object as this and making similar, if not identical, prohibitions has been quite generally sustained as a valid exercise of legislative power. The prohibitions of. the statute of Kansas upon the subject do not differ from those of the present statute in any substantial respect, though we are not informed that it contains the provision of the ninth section of the Ohio act. In *232 the State v. Smiley, 65 Kan., 240, a conviction under the statute was held valid and the judgment of the supreme court of Kansas in that case was affirmed by the Supreme Court of the United States at the October term, 1904. The opinion of the latter court is before us, but in the absence of an authorized syllabus we cannot know to what extent the case should be regarded as authority here. In the opinion the judgment is placed upon two grounds: that the federal court is bound by the interpretation which the state court had given to the statute, although it was alleged to be repugmant to the federal constitution, and that the interpretation of the state court was correct. The case can, of course, .be regarded as an authority only to the extent to which the opinions of the concurring judges were influenced by the belief that the statute had been correctly interpreted by the state court. In support of the conclusion that the conviction in the court of common pleas was proper we think no further additions need be’made to what was said in the case of the State ex rel. Attorney General v. The Buckeye Pipe Line Co.

Judgment of the circuit court reversed and that of the common pleas affirmed.

Davis, C. J., Price, Crew, Summers and Spear, JJ., concur.